NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0831

STATE OF LOUISIANA

VERSUS

WILLIAM B. TURNER

*Judgment Rendered:* APR 1 9 2024

* * * * * * * *

Appealed from the
18th Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Case No. 202151, Division B

The Honorable Tonya S. Lurry, Judge Presiding

* * * * * * * *

Katherine M. Franks                 Counsel for Defendant/Appellant
Madisonville, Louisiana             William B. Turner

Antonio M. "Tony" Clayton           Counsel for Appellee
District Attorney                   State of Louisiana
Terri Russo Lacy
Assistant District Attorney
Port Allen, Louisiana

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

**THERIOT, J.**

The defendant, William B. Turner, was charged by bill of information with possession with the intent to distribute or dispense twenty-eight grams or more of cocaine, a controlled dangerous substance under La. R.S. 40:964, Schedule II, (A)(4), in violation of La. R.S. 40:967(A)(1) & (B)(1)(b). He pled not guilty and, after a trial by jury, was found guilty as charged.[1] The defendant was subsequently sentenced to nineteen years imprisonment at hard labor. The defendant now appeals, assigning error to the dismissal of potential jurors with felony convictions, the denial of *Batson*[2] challenges, and alleged ineffective assistance of counsel. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

On September 30, 2020, Louisiana State Trooper Joshua Mitchell stopped the defendant for a traffic violation.[3] After learning that the defendant's driver's license was suspended, Trooper Mitchell requested but was denied consent to search the defendant's vehicle and summoned a K-9 unit to the scene. Deputy Mark Cooper of the Iberville Parish Sheriff's Office arrived with a trained narcotics search dog that alerted to the passenger side of the vehicle. Upon searching the vehicle, Trooper Mitchell recovered a substance later confirmed to consist of 571.62 grams of cocaine.

---

[1] This case is a retrial, as the initial trial on this matter resulted in a mistrial because the jury was deadlocked.

[2] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.1712, 90 L.Ed.2d 69 (1986).

[3] Before the stop, Trooper Mitchell was informed that the vehicle being driven by the defendant at the time of the stop was classified by the East Baton Rouge Parish Sheriff's Office as a vehicle of interest and that the defendant would be driving the vehicle. Trooper Mitchell located the vehicle, followed it until the defendant committed the traffic violation of improper lane usage, and then initiated the traffic stop.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues the trial court erred in instructing prospective jurors that convicted felons could not serve on a jury and in excusing from the jury pool two persons who were convicted of felonies in the distant past.

An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination. La. Const. art. I, § 17(A); La. C.Cr.P. art. 786. The purpose of voir dire examination is to determine prospective jurors' qualifications. See State v. Campbell, 2023-0295, p. 9 (La.App. 1 Cir. 11/3/23), 2023 WL 7290933, *5 (unpublished). Louisiana Code of Criminal Procedure article 401 sets forth the general qualifications for potential jurors. Subsection (A)(5) of Article 401 prohibits from serving on a jury those who are under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense *within the five-year period* immediately preceding the person's jury service. The question of a juror's qualifications is left to the sound discretion of the trial judge. Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. Campbell, 2023-0295 at p. 9, 2023 WL 7290933 at *5.

The trial in this case began on January 17, 2023. During voir dire, the trial court, in pertinent part, informed the potential jurors, "[y]ou must not be under indictment for a felony or convicted of a felony for which you have not been pardoned." In doing so, the trial court relayed the version of La. C.Cr.P. art. 401(A)(5) in effect prior to its amendment by 2021 La. Acts No. 121, § 1, which prohibited any person under indictment for a felony or convicted of a felony for which he had not been pardoned by the governor from serving on a jury, regardless of the date of the indictment or conviction. Thus, as the defendant contends, the trial court relied on the older version of the law.

3

The first prospective juror at issue, Horace Cox, informed the trial court that he was a convicted felon based on a conviction of distribution of cocaine and had never received a pardon, but had been out of prison for "over around thirty years." Defense counsel informed the trial court that the law recently changed, vaguely stating, "I think it impacts how long ago the conviction was, so I just -- the court just automatically excuses him unless you all know offhand[.]" Defense counsel, however, noted that he did not have any statute to reference on the matter. The trial court noted that it would "err on the side of caution" and excuse the juror. The second prospective juror at issue, Alfred Porterie, was dismissed after informing the trial court that he had a felony conviction of manslaughter "some years" ago, though he was not sure exactly how long ago.[4]

While Mr. Cox estimated that he was released from prison more than thirty years prior, and presumably would have also served any period of probation associated with his offense, he was not questioned and made no indication as to whether or not he had been placed on parole based on an early release. Mr. Porterie's response was even more vague, with no questioning or indication as to when he was released or whether he served any period of probation or parole.[5] Thus, the potential jurors at issue were not fully questioned as to whether they had been released from incarceration and/or were on probation or parole for their felony offenses within five years of the instant trial. Accordingly, the record is inadequate to determine if the potential jurors at issue qualified under the current criteria. See La. C.Cr.P.art. 401(A)(5) (as amended). Further, the potential jurors

---

[4] The defendant concedes that three other jurors with recent convictions or pending felony charges were properly excused.

[5] Pursuant to the former version of La. C.Cr.P. art. 893, relative to suspension of sentences in non-capital felonies for first or second offenders, a period of probation was generally limited to five years. See La. C.Cr.P. art. 893(A)(1)(a) (prior to amendment in 2017). In 2017, Article 893 was amended to reduce the probation period to a maximum of three years. See 2017 La. Acts. No. 280, § 1. Pursuant to La. R.S. 15:574.6, relative to early release on parole, a parole term generally shall be for the remainder of an offender's sentence.

4

at issue were not questioned as to the existence of any other disqualifications. If the defendant fails to interrogate as to the qualifications of the juror, he cannot raise the issue of qualification on appeal. See *State v. Oliver*, 193 La. 1084, 192 So. 725, 727 (La. 1939); see also *Campbell*, 2023-0295 at p. 10, 2023 WL 7290933 at *5; *State v. Zeno*, 2014-0325, p. 18 (La.App. 1 Cir. 9/19/14), 155 So.3d 4, 17, *writ denied*, 2014-2167 (La. 5/22/15), 170 So.3d 983, *quoting State v. Baxter*, 357 So.2d 271, 274 (La. 1978) ("[T]he defense should not be permitted to sit by during voir dire examination and learn as little as possible about a prospective juror, and then, after an unfavorable verdict, discover or seek out a ground for disqualification and demand a new trial.").

Moreover, the defendant concedes on appeal that he failed to object when the trial court excused the potential jurors at issue. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C.Cr.P.art. 841(A). The purpose of this rule is to make sure that the trial judge is apprised of the claim and given an opportunity to correct the alleged error. *State v. Odom*, 2003-1772, p. 12 (La.App. 1 Cir. 4/2/04), 878 So.2d 582, 591, *writ denied*, 2004-1105 (La.10/8/04), 883 So.2d 1026; see also *State v. Campbell*, 2006-0286, p. 85 (La. 5/21/08), 983 So.2d 810, 864, *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008) (wherein the Louisiana Supreme Court held the defendant, due to his failure to object thereto, waived any complaint on appeal regarding the trial court's granting of the State's challenges for cause); *Campbell*, 2023-0295 at pp. 10-11, 2023 WL 7290933 at *5 (wherein this court found that the failure to object to the same issue asserted herein, the dismissal of a potential juror under La. C.Cr.P.art. 401(A)(5), precluded consideration of the issue on appeal).[6] Based on the foregoing, assignment of error number one lacks merit.

---

[6] The defendant argues that "[s]ummary removal of a juror who is qualified under the current law is a structural error that requires reversal." However, the Louisiana Supreme Court has stated, "[s]tructural defects occur in only 'a very limited class of cases,' and include the total

5

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the defendant argues the trial court erred in granting the State's challenges for cause against African-American prospective jurors on the first panel, and in later ruling that the State's exclusion of African-American prospective jurors on the second panel did not give rise to a *Batson* challenge.

### *Challenges for Cause*

Pursuant to La. C.Cr.P.art. 797(2), the State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality. Additionally, La. C.Cr.P.art. 797(4) provides that the State or the defendant may challenge a juror for cause on the ground that "[t]he juror will not accept the law as given to him by the court[.]" A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. *State v. Mills*, 2013-0573, p. 5 (La.App. 1 Cir. 8/27/14), 153 So.3d 481, 487, *writ denied*, 2014-2027 (La. 5/22/15), 170 So.3d 982, and *writ denied*, 2014-2269 (La. 9/18/15), 178 So.3d 139.

A trial court is afforded broad discretion in determining whether to strike a juror for cause because of the trial court's ability to form a first-person impression

deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant's race, deprivation of the right to self-representation at trial, the right to a public trial, and erroneous reasonable doubt instructions." *State v. Langley*, 2006-1041, p. 6 (La. 5/22/07), 958 So.2d 1160, 1164, *cert. denied*, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed.2d 368 (2007). Where a potential juror is erroneously excused, the presumption is that individual was replaced by another fair and impartial juror. See *Commonwealth v. Williams*, 481 Mass. 443, 455, 116 N.E.3d 609, 620 (2019) (while the denial of a valid peremptory challenge is "prejudicial per se[,]" the dismissal of a prospective juror whom the defendant had hoped would be on the jury does not have the same implication); see also La. C.Cr.P. art 783 and *State v. Elam*, 312 So.2d 318, 322 (La. 1975) ("the trial court may, in its discretion, excuse prospective jurors in advance of time of trial; an exercise of that discretion will not be disturbed unless there is a showing of fraud or collusion which results in prejudice to the defendant."). Moreover, defendants are not entitled to a jury of any particular composition. *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975). We find that the instant issue did not implicate the defendant's right to an impartial jury, nor did it constitute structural error. See *Campbell*, 2023-0295 at p. 11, 2023 WL 7290933 at *5, n.4.

of prospective jurors during voir dire. *State v. Diggs*, 2019-0956, p. 4 (La.App. 1 Cir. 12/27/18), 294 So.3d 487, 491, *writ denied*, 2020-00181 (La. 7/24/20), 299 So.3d 69. The trial court "has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire" as they respond to questioning, whereas the reviewing court reviews the matter only on a transcript in a record. *State v. Dorsey*, 2010-0216, p. 32 (La. 9/7/11), 74 So.3d 603, 627, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. *Diggs*, 2019-0956 at p. 5, 294 So.3d at 492.[7]

In this case, the defendant notes that three prospective jurors, Sherman Smith, Johnny Payne, and Wanda Jackson, were excused from the first panel based on challenges for cause raised by the State. During voir dire examinations, after the State asked Mr. Smith if he felt the legal system was fair, the following colloquy took place between the State and Mr. Smith:

> Juror #207, Sherman Smith:
> Somehow. Didn't they just find them state troopers, you said it's going to be some state trooper for witness, of guilty of lying and they killed that boy and blah, blah, blah?
>
> Mr. Guidroz:
> The state police has made some headlines as of late.
>
> Juror #207, Sherman Smith:
> And they've been prosecuted -- right.
>
> Mr. Guidroz:
> There's no doubt about that. I don't think anybody that will be testifying in this case has anything --
>
> Juror #207, Sherman Smith:
> But they lied under oath and said he had got killed doing --

---

[7] Both the defendant and the State are given twelve peremptory challenges in trials of offenses punishable by death or necessarily by imprisonment at hard labor. La. C.Cr.P. art. 799; see also La. R.S. 40:967(B)(1)(b). Louisiana Code of Criminal Procedure art. 800(B) provides that the erroneous allowance to the State of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the State of more peremptory challenges than it is entitled to by law. Herein, the State exhausted all of its peremptory challenges.

Mr. Guidroz:

I don't know what they did. I know what I read in the paper about what you're talking about. As far as the facts of that case, I don't know about it. Are you going to hold that against my state trooper who takes the stand, though?

Juror #207, Sherman Smith:

Well, I ain't going to feel fair about none of this.

Mr. Smith later agreed that the burden of proof should be higher in criminal cases than in civil cases since a criminal conviction could "send somebody to prison . . . because somebody['s] life . . . is on the line."

Mr. Payne admitted to not paying attention twice during voir dire, once noting that he was in "la la land." Further, all three of the prospective jurors at issue, Mr. Smith, Mr. Payne, and Ms. Jackson, indicated that even if the State proved their case, they were not certain they would vote to convict. Specifically, the prospective jurors were asked to assign a number to their likelihood of voting to convict, assuming the State has met its burden of proving the case, on a scale from zero to ten, with zero being not likely, and ten being more likely. Mr. Smith assigned the number five, indicating a mid-range chance that he would vote based on the evidence, while Ms. Jackson and Mr. Payne both gave the number eight as their answers. Two other jurors, who assigned a number eight and nine, were not challenged for cause.

Ms. Jackson later explained her answer of eight, noting that proof beyond a reasonable doubt means "there's still that small part . . . you're not proving it completely." Each of the three prospective jurors at issue held firm to their response regarding their likelihood to convict in the face of proof beyond a reasonable doubt. The trial court granted the challenges for cause on this basis, as the prospective jurors would not say for certain that they would vote to convict should the State meet its burden of proof.

Based on our review of the transcript of voir dire as a whole, we find that the trial court did not err or abuse its discretion in granting the State's three challenges for cause. While the defendant notes that the prospective jurors were African American, we find that their responses revealed facts from which bias, prejudice, or inability to render judgment according to law could reasonably be inferred. Accordingly, the trial court did not abuse its discretion in excusing the jurors at issue. See La. C.Cr.P.art. 797(2) and (4); see also State v. Clemmons, 2014-1372 (La.App. 1 Cir. 9/21/15), 2015 WL 5546953, *8 (unpublished), writ denied, 2015-1969 (La. 11/18/16), 213 So.3d 385 (finding no abuse of discretion in granting the State's cause challenge where a prospective juror expressed difficulty rendering an impartial verdict according to the law and evidence).

### Batson Challenge

An equal protection violation occurs if a party exercises a peremptory challenge to excuse a prospective juror on the basis of that person's race. See Batson, 476 U.S. at 85-86, 106 S.Ct. at 1716-17. The Batson Court adopted a three-step analysis to determine if impermissible discriminatory practices have infringed upon the constitutional rights of a defendant or prospective jurors. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 93-98, 106 S.Ct. at 1721-24; State v. Jackson, 2016-1565, pp. 3-4 (La.App. 1 Cir. 10/12/17), 232 So.3d 628, 632, writ denied, 2017-1944 (La. 5/25/18), 243 So.3d 566.

To establish a prima facie case, the defendant must show: (1) the State's challenge was directed at a member of a cognizable group; (2) the challenge was

9

peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. *State v. Nelson*, 2010-1724, pp. 9-10 (La. 3/13/12), 85 So.3d 21, 29. In determining whether a *prima facie* showing of purposeful discrimination has been demonstrated, *Batson* instructs that the trial court should consider all relevant facts, including any pattern of strikes by the prosecutor against African-American prospective jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. See *Jackson*, 2016-1565 at p. 4, 232 So.3d at 632.

If a defendant makes a *prima facie* showing of discrimination in the use of peremptory challenges, the burden then shifts to the State to offer racially-neutral reasons for the use of the peremptory challenges. A neutral explanation for the challenge may be something less than a justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant solely because of the prospective juror's race. The neutral explanation must be one which is clear, reasonably specific, legitimate, and related to the particular case at bar. After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. The ultimate burden of persuasion is on the defendant. *State v. Kitts*, 2017-0777, pp. 31-32 (La.App. 1 Cir. 5/10/18), 250 So.3d 939, 961-62, *writ denied*, 2018-00872 (La. 1/28/20), 291 So.3d 1057.

The mere invocation of *Batson* when minority prospective jurors are peremptorily challenged does not present sufficient evidence to lead to an inference of purposeful discrimination. *State v. Battley*, 2022-0940 at p. 6

10

(La.App. 1 Cir. 7/6/23), 371 So.3d 94, 101. The State, in presenting race-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race-neutral. A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. *Jackson*, 2016-1565 at p. 5, 232 So.3d at 632-33.

In the instant case, the defendant raised a *Batson* challenge after the State used three peremptory challenges and one backstrike, after voir dire of the second panel, to remove four prospective jurors, two identified as white and two identified as African American. The trial court determined that the defendant failed to meet his initial burden and the State was, therefore, not required to provide race-neutral reasons for the dismissals. However, the trial court allowed the State to provide race-neutral reasons for the record. As to one of the African-American prospective jurors, Lilliana Caldwell, the State noted that she was a scientist and "wants absolutes." As to the second African-American prospective juror, Michelle Eisley, the State adopted its reasons for unsuccessfully challenging her for cause. Specifically, the State was concerned that Ms. Eisley would not follow the law as she indicated that the defendant should "try to prove [his] innocence or speak up," later stating that the burden of proof should be evenly split between the State and the defendant.

We agree with the trial court that the defendant did not establish a *prima facie* case of discrimination. Further, based on the State's articulated reasons and our review of the voir dire as a whole, we find no abuse of discretion in the trial court's denial of the *Batson* challenge raised herein. We find that the State offered race-neutral explanations that were reasonably supported by the record and had some basis in accepted trial strategy. See *Jackson*, 2016-1565 at p. 7, 232 So.3d at

11

634. Thus, considering all of the foregoing, assignment of error number two is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In assignment of error number three, the defendant argues his trial counsel was ineffective in failing to object to the trial court's erroneous instructions and application of La. C.Cr.P.art. 401(A)(5). The defendant further contends trial counsel was ineffective in failing to raise a *Batson* challenge during voir dire of the third jury panel.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient; and (2) the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. *State v. Miller*, 2015-1031, pp. 6-7 (La.App. 1 Cir. 12/23/15), 185 So.3d 811, 815-16, *writ denied*, 2016-0152 (La. 1/23/17), 215 So.3d 681. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *State v. Felder*, 2000-2887, p. 11 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 370, *writ denied*, 2001-3027 (La. 10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes

an inadequate showing on one of the components. *State v. Serigny*, 610 So.2d 857, 860 (La.App. 1 Cir. 1992), *writ denied*, 614 So.2d 1263 (La. 1993).

A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted, rather than on appeal. However, if the record discloses the evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. *State v. Cobb*, 2013-1593, p. 14 (La.App. 1 Cir. 3/27/14), 144 So.3d 17, 27.

Regarding the defendant's first claim of ineffective assistance of counsel, we note that it would not be possible for the defendant to show prejudice, as there is no way to show that the outcome of the trial would have been different had two prospective jurors not been excused due to felony convictions. Thus, because the defendant failed to demonstrate any prejudice caused by counsel's failure to object to the trial court's qualification instructions and/or to the dismissal of two potential jurors on the basis of their felony convictions, he has failed under the second prong of the *Strickland* test to show that his trial counsel was ineffective on this claim. Accordingly, we find that the defendant is not entitled to relief on this claim.

As to the second claim of ineffective assistance of counsel, because defense counsel did not raise a *Batson* challenge as to the third panel, the trial court did not undertake a *Batson* analysis. As stated, a claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court, where a full evidentiary hearing may be conducted. Since defense counsel did not make a *Batson* objection regarding the third panel, there was no *prima facie* showing that the State exercised any of its peremptory challenges to excuse jurors from that panel on the basis of race, and the burden never shifted to the State to articulate race-neutral reasons for striking those jurors. Accordingly, this claim is

13

more properly raised by application for post-conviction relief where, if necessary, the trial court may conduct a full evidentiary hearing.[8] See *Cobb*, 2013-1593 at p. 17, 144 So.3d at 28. We find no merit in assignment of error number three. Therefore, we affirm the conviction and sentence.

**CONVICTION AND SENTENCE AFFIRMED.**

---

[8] The defendant would have to satisfy the requirements of La. C.Cr.P. art. 924, et seq., in order to receive such a hearing.

14